UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON ATLANTIC PARKING LLC,　　　　)<br>　　　　　　　　　　Plaintiff,　　　　　　　)<br>v.　　　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　　)<br>JOHN OTTENBERG, AS HE IS RECEIVER OF )<br>EXTELL BOSTON PARKING LLC　　　　　　)<br>　　　　　　　　　　Defendant.　　　　　　)| CIVIL ACTION NO.<br>1:10-CV-10107-WGY |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

The defendant John C. Ottenberg, as he is Receiver of Extell Boston Parking LLC ("Receiver"), has moved pursuant to F.R.C.P. 12(b)(6) for dismissal of the Complaint for failure to state a claim upon which relief can be granted. The claims set forth in the Complaint of the plaintiff Boston Atlantic Parking LLC ("Boston Atlantic") are predicated on a misreading of the Lease between the parties, a copy of which is annexed to the Complaint as Exhibit A. The claims as set forth in the Lease cannot survive a correct interpretation of the Lease based upon applicable law. The claim that applicable provisions of the Lease were waived fails to adequately articulate a claim on that basis.

The Complaint contains three Counts. Count I seeks a declaratory judgment as to whether the plaintiff was required under the terms of the Lease to increase parking charges for the parking garage, as demanded by the Receiver, or could exercise its discretion not to do so. Count II seeks a declaratory judgment as to whether the Landlord under the Lease, prior to the appointment of the Receiver, waived its right to demand that the parking charges be increased. Count III seeks a return of the monies paid by plaintiff to the Receiver as the Landlord's share of

the increase in parking charges that the Receiver claimed should have been implemented. Plaintiff alleges those funds were paid pursuant to a reservation of rights.

STANDARDS OF REVIEW

To survive a motion to dismiss for failure to state a claim under M.R.C.P. 12(b)(6), "[t]he Complaint must contain factual allegations enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the Complaint are true. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). Additionally phrased, a complaint must set forth "factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to 'reflect the threshold requirements of [Fed.R.Civ.P.] 8(a)(2) that the 'plan statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'". *Bell Atlantic Corp., supra*, at 1966.

Certain ground rules govern consideration of a motion to dismiss under F.R.C.P. 12(b)(6). The court must construe the complaint in the light most favorable to the plaintiff, accept as true all the facts alleged in the complaint, and draw all inferences that can be reasonably drawn therefrom in plaintiff's favor. *Dixon v. Wells Fargo Bank*, U.S.D.C., Mass., No. 11-10368-WGY-July 22, 2011; Wright and Miller, *Federal Practice and Procedure*, Civil 3d, § 1357, at 417. The burden is on the moving party to prove that no legally recognizable claim for relief exists. Wright and Miller, *supra*, at § 1357, at 462.

Although the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. *Dixon, supra, citing, Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Where there is no ambiguity in the language of a contract, it is appropriate for the court to interpret a contact on a motion to dismiss for failure to state a claim. *Mitzan v. Medview Services,*

2

*Inc.*, Norfolk Sup. 98-01211 (Ma. Super. June 16, 1999, Doerfer, J.), citing, *Gomes v. Metropolitan Property & Cos. In. Co.*, 45 Mass. App. Ct. 27, 31-32, rev. den., 428 Mass. 1102 (1998); *Blank v. Chelmsford Ob/Gyn, P.C.*, 420 Mass. 404, 406-409 (1995).

FACTUAL BACKGROUND

As set forth in the Complaint, the applicable facts are as follows. Boston Atlantic and Extell Boston Parking LLC ("Extell Parking") are parties to a long term lease governing the parking garage located at 500 Atlantic Avenue, Boston, Massachusetts (Compl. ¶¶ 1-5). A copy of the Lease is annexed to the Complaint as Exhibit A.[1] The parking garage is one of three condominium units comprising the primary condominium at that location. The other two units are the Intercontinental Hotel ("Hotel") and the Residential Condominium ("Residences") (Compl. ¶ 6). Extell Parking owns the fee to the garage and leases the premises to Boston Atlantic ( Lease, Art. 1). The Receiver was appointed by this Court on May 10, 2011 as receiver of Extell Parking and thereby succeeded to Extell Parking's position as Landlord under the Lease (Compl. ¶ 2).

Pursuant to the Lease, as noted, Boston Atlantic as Tenant operates the parking garage. It collects the revenues from the patrons who use the garage. Extell Boston and now the Receiver as Landlord is entitled to receive rent[2], the amount of which is predicated on the amount of parking revenues (Lease, Art. 2). After the first "Lease Year" (actually, the first 14 months) of the Lease (which period is not at issue here), the amount of rent payable by Boston Atlantic to Extell Parking is calculated based upon a formula tied to net operating revenues as set forth in the Lease (Lease, Art. 2). That formula as a general matter provides for a base annual rental

---

[1] The provisions of the Lease itself will of course govern, rather than the characterization thereof as may appear in the text of the Complaint.
[2] Pursuant to the terms of the arrangement amongst Extell Parking's lender and Extell Parking, the rents are paid directly to the lender.

amount of $750,000 and payment of 50% of the next $400,000 of net operating revenues (i.e., gross revenues less operating expenses as they are defined in the Lease) in excess of $750,000 and 75% of net revenues in excess of $1,150,000 (Sections 2.01, 2.02). In short, the more the net revenues exceed $750,000, the greater the amount of rent received by Extell Parking.

The Lease recognizes that the customers of the garage include two significant constituencies: hotel guests and owners of the residential condominiums. The Lease sets forth the applicable rates that are to be charged for parking for each of these constituencies (Art. 35). As applicable to this controversy, the Lease contains provisions setting forth formulae for increasing on an annual basis the parking charges to each of these constituencies (Sections 35.01, 35.13, 35.14).

Pursuant to the Lease, up to 150 parking spaces are made available to the Hotel for use by its guests, patrons and employees (Section 35.01). The Hotel pays Boston Parking a fee for each vehicle parked based on three components: (1) a storage fee, (2) a valet/operating expense allocation ("VOPEX charge") and (3) an oversized vehicle charge. Id. At issue in this case is the VOPEX charge. The Lease provides that the VOPEX charge is $13 per vehicle for the first Lease Year and "shall" be increased each year by the greater of the "Parking Rate Increase" or the "Commercial Garage Percentage Increase", Id. (as both terms are further defined in the Lease). As further set forth in the Lease, the annual increase to the VOPEX charge is equal to the percentage increase in the Parking Rate Increase or the Commercial Garage Percentage Increase, whichever is greater, but in no event less than the increase in the CPI (Sections 35.01, 35.14).

The residential condominium owners ("Residences") are allotted 160 parking spaces. The condominium association receives a single bill for all of the spaces ("Residential Parking Fee") (Section 35.12). The Lease provides that the base Residential Parking Fee is $290,000

4

commencing with the second year of the Lease, increased in accordance with the formula set forth in Section 35.14 of the Lease. That formula in effect provides that the annual increase to the Residential Parking Fee shall be equal to the greater of the increase in comparable parking rates in Boston as determined pursuant to that formula or the increase in the CPI (Section 35.14).

Other pertinent provisions of the Lease are as follows. The Lease has an integration clause. See Article 29, quoted at length below. That clause includes the statement that "[n]o provision of this Lease shall be deemed to have been waived unless such waiver be in writing signed by the waiving party." (Art. 29). The Lease contains a provision excusing the Tenant's "Inability to Perform" under certain limited conditions (Article 30, again, quoted at length below). The Lease provides that in the event of litigation between the Landlord and Tenant the prevailing party will be entitled to recover its reasonable attorney's fees and costs (Section 36.05).

In that the Lease sets the rate for the parking charges for the Hotel and the Residences, those two entities are parties to the Lease, but only with respect to the specific Article, i.e., Article 35, which addresses these parking charges applicable to them. See Lease signature block. Above the signature lines for the Hotel and Residences appears the limiting language: "Solely For the Purpose of Agreeing to Article 35 Hereof."

The Complaint alleges that Boston Atlantic, using its business judgment, decided not to increase the parking charges for 2008 and 2009 because of soft market conditions. Plaintiff also alleges that Extell Parking was aware of this decision and acquiesced in it (Compl. ¶ 16). The Complaint alleges that the Receiver demanded that Boston Atlantic pay an additional amount of rent, i.e., the amount Boston Atlantic would have been required to pay if it had increased the parking charges pursuant to the standards set forth in the Lease, and that it paid those charges

5

under reservation of rights in order to avoid being placed into default under the Lease (Compl. ¶¶ 19-21). Plaintiff claims to have paid $65,582 (Compl. ¶ 21).

Boston Atlantic seeks a declaration of rights determining that it was not required to pay this amount because it had sole discretion as to whether to increase parking charges (Count I). It also seeks return of the $65,582 (Count III). The Complaint alternatively alleges that, prior to the appointment of the Receiver, Extell Parking was aware that the parking charges had not been increased, did not demand that they be increased and acquiesced in or concurred with Boston Atlantic's actions (Count II).

ARGUMENT

The Lease Requires That The Parking Charges Be Increased

In the provisions of the Lease at issue in this case governing the increases in parking charges to be made in years subsequent to the First Lease Year (which was defined as a 14 month period), the Lease consistently and invariably employs the term "shall." Thus, Section 35.01 (relating to Hotel parkers) provides:

> "For the first Lease Year, the VOPEX Charge **shall** be deemed to be $13.00 per vehicle and **shall** thereafter be increased on the first day of the second Lease Year and on the first day of each subsequent Lease Year by the greater of: (x) the Parking Rate Increase (as hereinafter defined); or (y) the Commercial Garage Percentage Increase (as hereinafter defined), all as provided in Section 35.14 hereof." (emphasis supplied)

Section 35.13 (relating to the Residences) provides:

> "For each lease Year after the first Lease Year, the Residential Parking Fee **shall** be $290,000, subject to increase at the commencement of the second Lease Year and each subsequent Lease Year as provided in Section 35.14 hereof." (emphasis supplied)

Section 35.14 (relating to the VOPEX Charge and the Residential Parking Fee) provides:

> "Section 35.14. The VOPEX Charge and the Residential Parking Fee **shall** each be increased annually on the first day of the second Lease Year and thereafter on the

6

first day of each subsequent Lease Year through and including the expiration of the term (each such day, an "Adjustment Date") by a percentage (the "parking Rate Increase") equal to the percentages increase in the Consumer Price Index for all Urban Consumers published by the United State Department of Labor, Bureau of Labor Statistics for All items, Northeast Region (1982-84=100 standard reference base period) (hereinafter the "Index") **but in no event shall** such Parking Rate Increase be less than the: (a) percentage increase in the 10-12 hour parking rate of comparable parking garages in Boston, Massachusetts in the proximity of the Demised Premises for the same twelve (12) month period as to the VOPEX Charge (the "Commercial Garage Percentage Increase"); and (b) the average monthly percentage increase for the same twelve (12) month period in the monthly parking rate of garages in similar first class residential buildings in Boston, Massachusetts as to the Residential Parking Fee (the "Residential Garage Percentage Increase"). For purposes of determining the Parking Rate Increase for any Adjustment Date, the Index number for the month immediately preceding (or such other month as **shall** then be the latest available Index number closest to the month immediately preceding) the Adjustment Date (the "Adjusted Index Number") **shall** be compared to the Index for the month in which the Commencement Date shall occur (the "Base Index Number"). If on any Adjustment Date the Adjusted Index Number is greater than the Base Index Number, the VOPEX Charge and the Residential Parking Fee, as applicable, for the ensuing twelve (12) month period **shall be adjusted upward** effective as of the applicable Adjustment Date by multiplying the then current VOPEX Charge and the then current Residential Parking Fee (as applicable) times a fraction whose numerator is the Adjusted Index Number and whose denominate is the Base Index." (emphasis supplied)

Thus, the Lease repeatedly, consistently and without exception employs the term "shall" when referring to the imposition of annual increases to the parking charges. This choice of words clearly evidences the intent that the increases be mandatory rather than discretionary on Boston Atlantic's part. "The use of the word 'shall' indicates a mandatory obligation." *South Camden Cit. In Action v. New Jersey Dept., E. Prot.*, 145 F. Supp. 2d 505, 542 (N.J. 2001); *Marie O. v. Edgar*, 131 F. 3d 610, 620 (7th Cir. 1997) ("The natural meanings of ["shall"] . . . is mandatory, not precatory."); *Johnson v. Guhl*, 91 F. Supp. 2d 754, 769 (N.J. 2000).

Moreover, other language in these sections reinforces this interpretation. Section 35.14 provides that the rates shall be increased by the CPI, "*but in no event shall* such Parking Rate Increase be less than the [rates charged by comparable parking garages]." (emphasis supplied)

7

The choice of the "*but in no event shall*" language is inconsistent with plaintiff's arguments that it had discretion to choose not to increase parking charges or that there was an exception if "general market conditions" warranted.

In short, the clear, consistent and unambiguous language of the Lease requires Boston Atlantic to raise these parking charges pursuant to the very specific formulae sent forth in the Lease.

<u>There Is No Exception For a Change in General Market Conditions</u>

Plaintiff asserts in its Complaint that the Lease contains an exception to the requirement (if a requirement exists) that parking charges be increased when "general market conditions" dictate otherwise. In support of this argument it directs the Court to Section 30.01 of the Lease.

## ARTICLE 30
## INABILITY TO PERFORM

Section 30.01. This Lease and the obligation of Tenant to pay Annual Rent and Additional Rent hereunder, and perform and comply with all of the other covenants and agreements hereunder on the part of Tenant to be performed or complied with, shall in no way be affected, impaired or excused because of Landlord's delay or failure to perform or comply with any of the covenants and agreements hereunder on the part of Landlord to be performed or complied with, or to furnish any service or facility, for reasons beyond the reasonable control of Landlord including, without limiting the generality of the foregoing, strikes, lock-outs or labor problems, governmental pre-emption in connection with a national emergency, or by reason of any rule, order or regulation of any department or subdivision thereof, of any governmental agency, or by reason of the conditions of supply and demand which have been or shall be affected by war or other emergency **or general market conditions**. Tenant shall not be deemed to be in default under the terms and provisions of this Lease in the event Tenant cannot perform or comply with **any non-monetary provisions** hereof, for reasons or encumbrances beyond the reasonable control of Tenant, including, without limiting the generality of the foregoing, governmental pre-emption in connection with a national emergency, terrorism, act of terrorism, or by reason of any rule, order or regulation of any department or subdivision thereof, of any governmental agency or by reason of the conditions of supply and demand which have been or shall be affected by war or other emergency **or general market conditions**; provided, however, in no way shall Tenant be permitted to delay the fulfillment of

8

its obligations timely to pay Annual Rent and Additional Rent hereunder." (emphasis supplied)

Section 30.01 uses the term "general market conditions" twice. The first sentence of that section addresses the situation where the Landlord's failure to fulfill its leasehold obligations affects the Tenant's obligation to make payment and perform its other obligations. That sentence provides that the Tenant's obligations are not affected by any delay or failure on Landlord's part if the delay or failure was for reasons beyond the reasonable control of Landlord, including conditions of supply and demand caused by *"general market conditions"*. This provision applies to a situation where Landlord has failed to fulfill its leasehold obligation, a situation which is not applicable here. In essence, however, this sentence expresses the opposite of what Plaintiff argues it means; a slowdown in the general parking market [as it may affect Landlord] is not grounds to excuse Tenant from complying with all covenants and agreements in the Lease. The second sentence of Section 30.01 relates to Tenant's inability to comply with "any non-monetary provisions" of the Lease by reason of matters beyond the reasonable control of Tenant, including conditions of supply and demand affected by *"general market conditions"*. Of course, at issue here are monetary rather than non-monetary provisions and thus this section is not applicable to this dispute.

To eliminate any possibility for dispute, the Lease includes the following language at the end of the second sentence: "provided however, in no way shall Tenant be permitted to delay the fulfillment of its obligations timely to pay Annual Rent and Additional Rent hereunder." Thus Section 30.01 and the "general market conditions" language do not permit Tenant to refuse to increase parking charges required by the Lease on the basis of reduced demand for parking in the marketplace.[3]

---

[3] The Receiver does not concede that there was in fact any reduced demand.

9

Article 35 is Part of the Lease and Can Be Enforced by Landlord.

Boston Atlantic also asserts that Article 35, the part of the Lease which contains the provisions for increasing the parking charges, does not confer any rights or benefits on Extell Parking, but, rather, relates solely to the rights and obligations between Boston Atlantic and the Hotel and Boston Atlantic and the Residences. In support of this argument, Boston Atlantic points out that the Hotel and the Residences each are a party to the Lease with respect to Article 35, which Article contains the provisions for payment of and increases to the VOPEX and Residential Parking Fee. Boston Atlantic points further to the fact that Article 35 contains provisions for resolution of disputes between Boston Atlantic and the Hotel and Boston Atlantic and the Residences, but does not contain a provision for resolution of disputes between Boston Atlantic and Extell Parking.

A fair reading of the Lease makes clear that the provisions to increase the parking charges, i.e., the VOPEX and Residential Parking Fee, set out a benefit running to the Landlord as well as the Tenant. The overarching arrangement under the Lease is one where Extell Parking benefits from increases in rental income, because the rent it receives is predicated upon a percentage of the net annual revenues received by Boston Atlantic.

The Lease unambiguously indicates that the entire Lease governs the rights and obligations of the Landlord and Tenant, and that no provisions, including Article 35, are expressly excepted therefrom. Article 1 of the Lease states that the Landlord is renting the garage to Tenant "upon and subject to the covenants conditions and agreements herein set forth. . . ". This is no exclusion in Article 1 for Article 35 or any portion thereof. Section 29.02 provides that the "Lease with the schedules, riders and exhibits, if any, annexed hereto contains the entire agreement between Landlord and Tenant. . . ". Once again, there is no exclusion for Article 35.

In addition, Article 26, captioned "PERSONS BOUND", PROVIDES THAT THE "COVENANTS, AGREEMENTS, TERMS, PROVISIONS AND CONDITIONS" OF THE Lease bind the successors of the parties, except for Article 10, in certain limited respects.

### ARTICLE 26
### PERSONS BOUND

The covenants, agreements, terms, provisions and conditions of this Lease shall bind and inure to the benefit of the respective heirs, distributees, executors, distributes, executors administrators, successors, assigns and legal representatives of the parties hereto with the same effect as if mentioned in each instance where a party hereto is named or referred to, except that no violation of the provisions of Article 10 shall operate to vest any rights in any successor, assignee or legal representative of Tenant. . ."

The structure of and choice of language appearing in the signature block is also revealing. It is as follows:

IN WITNESS WHEREOF, Landlord and Tenant have respectively signed and sealed this lease as of the day and year first above written.

LANDLORD:
EXTELL BOSTON PARKING LLC

By: _____
    Gary Barnett, President

TENANT:
BOSTON ATLANTIC PARKING LLC

By: _____
    Darryl Mallah
    Chief Executive Officer

SOLELY FOR THE PURPOSE OF AGREEING TO
ARTICLE 35 HEREOF:

INTERCONTINENTAL HOTELS GROUP
RESOURCES, INC.

By: _____
    Robert J. Chitty
    Vice President

RESIDENTIAL CONDOMINIUM ASSOCIATION:

THE RESIDENCE AT THE INTERCONTINENTAL
CONDOMINIUM

By: _____
    **Gary Barnett**
    **Authorized Trustee**

This structure and language indicates that the Lease terms are between Extell Parking as Landlord and Boston Atlantic as Tenant and that the Hotel and Residences are additional parties also agreeing to Article 35. Thus, the Landlord and Tenant agree to all provisions of the Lease and the Hotel and Residences are additional parties who also sign on and subscribe to this one Article. If it was the intent of the parties that Article 35 was not to be applicable to Extell Parking, the terms contained in Article 35 either (a) should have been the subject of a separate document just between or amongst Boston Atlantic and the Hotel and Residences, or (b) there should have been express language indicating that Article 35 was not applicable to Extell Parking. Nowhere in the Lease is there any statement that, or reference to, the core contention of plaintiff that Article 35 does not afford rights to the Landlord.

Finally, plaintiff argues that Article 35 contains dispute resolution procedures governing disputes between Boston Atlantic and the Hotel and Boston Atlantic and the Residences and that these procedures do not include participation by Extell Parking. Section 35.11 states:

> "Section 35.11. In the event that the Hotel disputes whether: (i) adjustments to the VOPEX Charge made by tenant; and/or (ii) tenant's fulfillment of its obligations hereunder respecting the level of service to be provided to guests of the Hotel are in violation of the terms of this Lease, Tenant and the Hotel will each use commercially reasonable efforts to resolve such dispute and if they cannot do so within thirty (30) days, Tenant and the Hotel will submit the disputed matter to arbitration for resolution before the American Arbitration Association in Boston, Massachusetts pursuant to its rules governing expedited arbitration, it being understood and agreed that: (a) no term or provision of this Lease may be changed modified or affected in such proceeding; and (b) the fees and expenses of the arbitrators) and all other expenses (including attorneys' fees, witness fees and similar expenses of the parties) of the arbitration shall be borne by the parties equally."

It is natural and expected that since Boston Atlantic is collecting the parking charges from the Hotel and providing the parking services to the Hotel, that it would be Boston Atlantic with whom the Hotel would have to raise and resolve disputes on those subjects. Extell Parking neither collects parking charges from nor renders parking services to the Hotel.

Section 35.16 states:

> "Section 35.16. In the event that the Residential Condominium Association disputes whether Tenant is fulfilling its obligations hereunder respecting the parking and related services to be provided to the owners and occupants of residential condominium units in the Residential Unit, Tenant and the Residential Condominium Association ill each use commercially reasonable efforts to resolve such dispute and if they cannot do so within thirty (30) days, Tenant and the Residential condominium Association will submit the disputed matter to arbitration for resolution before the American Arbitration association in Boston, Massachusetts pursuant to its rules governing expedited arbitration, it being understood and agreed that: (1) no term or provision of this Lease may be changed, modified or affected in such proceeding; and (ii) the fees and expenses of the arbitrator(s) and all other expense (including attorneys' fees, witness fees and similar expenses of the parties) of the arbitration shall be borne by the parties equally."

This provision for dispute resolution relates solely to disputes regarding the quality of services rendered by Boston Atlantic to the Residences, not the appropriateness of any increase in charges. Once again, it would not make sense to have Extell Parking participate in arbitration over the quality of service rendered by Boston Atlantic to the Residences, since Extell Parking is not rendering any parking services. Once again, the procedure in this provision is invoked on the initiative of the Residences, not Boston Atlantic.

The Lease has a separate procedure for resolution of disputes between the Landlord and Tenant, and that procedure is not limited to only certain Articles of the Lease and certainly does not exclude Article 35. Thus, Section 10.05 provides for arbitration of disputes between Landlord and Tenant. It also provides that the parties may seek an injunction, declaratory judgment or specific performance. Section 36.05 provides that the successful party in any

litigation shall be entitled to recover reasonable attorneys' fees and disbursements. Neither of these provisions in any way excludes or carves out resolution of disputes pursuant to Article 35.

Count II – Waiver

In Count II, titled "Declaratory Judgment – Waiver", Boston Atlantic alleges that Extell Parking, prior to the time of the appointment of the Receiver, waived the Landlord's right under the Lease (if there was such a right) to require that the parking charges be increased. The Complaint does not reference any writing that constitutes the waiver. It does not even appear to allege, at least with any specificity, any express oral statement that constitutes the waiver. Rather, the Complaint alleges that Extell Parking was aware that Boston Atlantic had not increased its charges and "never asserted" that the charges "were not being increased" and did not "make any demands" that Boston Atlantic increase the charges (Compl. ¶ 33). The Complaint does go on to allege that Extell Parking "acknowledged and concurred" in Boston Atlantic's decision not to increase the charges (Compl. ¶¶ 32-33), but only asserts this allegation in this most conclusory fashion. These allegations are not sufficient to withstand a motion to dismiss in light of the language contained in the Lease and the standard of pleading required by *Bell Atlantic Corp.*

The Lease contains detailed and precise provisions limiting the manner in which provisions of the Lease may be waived. It also contains an integration clause. The relevant provisions are as follows.

**ARTICLE 29**
**NO WAIVER; ENTIRE AGREEMENT**

**Section 29.01.** The failure of Landlord or Tenant to seek redress for violation of or to insist upon the strict performance of any covenant, agreement, term, provision or condition of this Lease, or any of the rules shall not constitute a wavier thereof. The receipt by Landlord or payment by Tenant of rent with knowledge of the breach of any covenant,

agreement, term, provision or condition of this Lease shall not be deemed a waiver of such breach. No provision of this Lease shall be deemed to have been waived, *unless such waiver be in writing signed by the waiving party*. No payment by tenant or receipt by Landlord of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of such rent or Additional Rent or other charge owing by Tenant, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed binding on Landlord or an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of the rent owing by Tenant, and to pursue each and every remedy in this Lease or by law provided. *(emphasis added)*

. . .

**Section 29.02.** This Lease with the schedules, riders and exhibits if any, annexed hereto contains the entire agreement between Landlord and Tenant and any agreement hereafter made between Landlord and Tenant shall be ineffective to change modify, waive, release, discharge, terminate or effect a surrender or abandonment of this Lease, in whole or in part, unless such agreement is in writing and signed by the party against whom enforcement is sought.

Waiver has been defined as "a voluntary and intentional relinquishment or abandonment of a known right or privilege, which except for such waiver, would have been enjoyed." *Attorney General v. Industrial Nat'l Bank of Rhode Island*, 380 Mass. 533, 535 n. 4 (1980), *quoting*, *Buffum v. Chase Nat'l Bank*, 392 F. 2d 58, 60-61 (7th Cir., 1951), *cert. den.*, 342 U.S. 944 (1952).

The complaint does not plead that the alleged waiver was in writing. As a result, the plaintiff's claim is barred by the express "non-waiver" clauses of the Lease.

"Non-waiver clauses" are enforceable in many jurisdictions. The Receiver could not find any precedent in Massachusetts addressing, one way or the other, whether non-waiver clauses are enforceable in Massachusetts. See, however, *Perry v. Wolaver*, 506 F. 3d, 48, 54 (1st Cir. 2007) (letter of notice establishes what was waived). However, the better reasoned decisions on this issue respect and enforce such clauses.

15

Non-waiver clauses in a contract are enforceable in the Federal Circuit. *See, Public Service Company of Oklahoma v. U.S.* (Fed. Cl. 2-16-2010) No. 08-501C, at 9. As stated therein: "[t]he parties have not cited to binding precedent, and the court has found none, which has held that a party may waive a non-waiver clause . . . Mere failure to object to a contract breach cannot, without more, waive a non-waiver clause." *Id. See also, B.P.G. Autoland Jeep-Eagle v. Chrysler,* 799 F. Supp. 1250, 1255-56 (D.C. Mass. 1992) (Connecticut enforces non-waiver clauses in a variety of contractual arrangements, even ones involving consumer claims, to overcome claims of wavier, estoppel or breach of an implied warranty of good faith and fair dealing); *Davis v. Merrill Lunch Business Financial Ser.,* No. 03C2680 (N.D. Ill. 2004), at 7 (non-waiver clauses are enforceable under Illinois law); *Little Caesar Enter. v. R-J-L Foods,* 796 F. Supp. 1026, 1032 (E.D. Mich. 1992) (Michigan law is to same effect); *Burger King Corporation v. Histon, Inc.,* 203 F. Supp. 2d 1357, 1365 (S. D. Fla. 2002) (as is Florida law); *Allman v. UMG Recordings,* 530 F. Supp. 2d 602, 608 (S.D.N.Y. 2008) (as is New York law), *quoting, Towers Charter & Marine Corp. v. Cadillac Ins. Co.,* 894 F. 2d 516, 522 (2d Cir. 1990) (["A] written agreement that expressly states it can be modified only in writing cannot be modified orally."); *Family Kingdom v. EMIF New Jersey Ltd,* 225 B. R. 65, 74 (NJ 1998) (New Jersey law is to same effect). There are jurisdictions which hold to the contrary, however. *See, Gillani Consulting v. Daewoo Heavy Ind. Amer. Corp.,* Case No. C05-0823-JCC (W. D. Wash. 12-7-2006) (under law of Washington, non-waiver clause does not bar claim of oral waiver); *Barinaga v. Ariel Wireless Inc.,* CV 02-58-BR (D.C. Or., July 2, 2002) (law of Oregon is to the same effect). [4]

---

[4] While Massachusetts law recognizes that an integration clause requiring that modifications to the contract be in writing may not always be the "final answer" (see *Tomer v.*

Even if a claim of waiver were permitted in light of the non-waiver clauses, Massachusetts requires a strict standard of proof of waiver. "[I]f the only proof of intention to waive rests on what a party does or forbears to do, his act or omissions to act should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of his conduct is possible." *Attorney Gen. v. Industrial Nat'l Bank of Rhode Island*, 380 Mass. 533, 536 n. 4 (1980), *quoting, Buffum v. Chase Nat'l Bank*, 192 F. 2d 58, 60-61 (7th Cir. 1951), *cert. den.*, 342 U.S. 944 (1952). The Complaint which speaks in terms of Boston Atlantic having "never asserted" and did not "make any demands" as the alleged basis for waiver fails to meet this standard. Other reasonable explanations are possible, e.g., it was an accounting oversight.

In addition, under the pleading requirement articulated in *Bell Atlantic Corp.*, supra, the allegations of the Complaint as to waiver do not "possess enough heft" to show the plaintiff is entitled to relief. *Id.*, at 1966.

---

*Hollister Associates*, MA Super No. 051672, BLSI (Jan 17, 2006, van Gestel)), there are two conditions that must be satisfied to establish an oral modification.
   First, there must be valid consideration for the modification. Id; *Siegel v. Knott*, 316 Mass. 526, 528 (1944). No consideration is alleged in the Complaint.
   Second, "the evidence of a subsequent oral modification . . . [must be] of sufficient force to overcome the presumption that the integrated and complete agreement which requires written consent to modification, expresses the intent of the parties." *Turner v. Hollister Associates, supra, quoting, Cambridgeport Savings Bank v. Boersner*, 414 Mass. 432, 439 & n. 10 (1992). Combining this requirement that the allegations must be of sufficient force to overcome the presumption created by the clear intent of the Lease with the requirement of *Bell Atlantic Corp.* that a complaint must contain factual allegations that rise above the speculative level, the complaint fails to adequately plead facts to establish waiver. This is especially so in light of the very strong, particularized and extensive language in this Lease regarding "No Waiver" and the centrality of the no waiver clause.
   Of course, no oral modification is alleged in this case.

17

Finally, the Statute of Frauds requires a writing signed by the party to be charged to be enforceable with respect to a contract concerning land, such as this Lease. M.G.L. c. 259, § 1 (Fourth).

Plaintiff May Not Sue For Damages-Count III.

Count III of the Complaint seeks a judgment for a monetary recovery for the $65,582 paid to the Receiver upon his demand for past due rent. Plaintiff cannot prevail on this claim for the reason, in addition to those expressed above, that under the Lease, the Tenant waived its right to seek money damages. Article 10.05 provides:

> "Tenant agrees that its sole remedies in cases where Landlord's reasonableness in exercising its judgment or withholding its consent or approval is in question shall be to arbitrate same as hereinafter specified or to seek an injunction, declaratory judgment, or specific performance, the rights to money damages being hereby specifically waived."

The Receiver exercised his judgment to demand additional rent and Tenant cannot seek money damages as a result thereof.

## CONCLUSION

For the reasons set forth herein, the Complaint must be dismissed pursuant to F.R.C.P. 12(b)(6).

JOHN C. OTTENBERG, RECEIVER OF
EXTELL BOSTON PARKING LLC

_____
John C. Ottenberg, Esq. (BBO #380955)
Ottenberg & Dunkless LLP
101 Arch Street
Boston, MA 02110
617-342-8600
ottenberg@odllp.com

August 29, 2011

18